UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| LEE W., § § | |
| Plaintiff, § § | |
| v. § | Case # 1:20-CV-008-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § § | MEMORANDUM DECISION AND ORDER |
| Defendant. § | |

## **INTRODUCTION**

Plaintiff Lee W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 11).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED.**

## **BACKGROUND**

On April 26, 2016, Plaintiff protectively filed an application for SSI, alleging disability beginning November 1, 2010 (the disability onset date), due to depression, auditory hallucinations, anxiety, back problems, and prostate problems. Transcript ("Tr.") 115-20, 141. Plaintiff's claim was denied initially on August 11, 2016, after which he requested an administrative hearing. Tr. 54-59, 61-63. On July 31, 2018, Administrative Law Judge Arthur Patane (the "ALJ") conducted

a video hearing from Albany, New York. Tr. 13, 39-67. Plaintiff appeared and testified from Buffalo, New York. Tr. 28. After the ALJ advised Plaintiff of his right to representation, Plaintiff waived his right to representation, and proceeded without a representative. Tr. 31, 106.

The ALJ issued an unfavorable decision on November 20, 2018, finding that Plaintiff was not disabled. Tr. 13-23. Thereafter, on December 13, 2018, Plaintiff appointed Kenneth R. Hiller ("Mr. Hiller"), an attorney, as his representative. Tr. 9. On December 22, 2018, the Appeals Council granted Plaintiff's request additional time, so that Mr. Hiller could submit additional evidence and/or a statement about the facts and the law in Plaintiff's case. Tr. 7-8. Mr. Hiller submitted a letter to the Appeals Council asking it to consider "whether the ALJ adhered to his statutory duty to develop the hearing record." Tr. 207. However, Mr. Hiller did not submit any additional evidence. *See id.*

On November 8, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 4, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 20, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since April 26, 2016, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, status post tibia fibula fracture requiring intramedullary rodding, and asthma (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant can understand and execute simple work, but should avoid exposure to dust, smoke, allergens and other respiratory irritants;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on August 3, 1983 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 26, 2016, the date the application was filed (20 CFR 416.920(g)).

Tr. 13-23.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on April 26, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 23.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ failed to reconcile his RFC determination with the two consultative examination opinions he adopted. *See* ECF No. 8-1 at 1, 11-16. Accordingly, argues Plaintiff, the ALJ's RFC finding is unsupported by substantial evidence. *Id*. Plaintiff next argues that remand is warranted because the ALJ had a "heightened duty" to develop the record in light of Plaintiff's *pro se* status. *See id*. at 16-19. He specifically contends that the ALJ failed to provide a full and fair hearing, because the ALJ did not sufficiently question Plaintiff about his symptoms and functional limitations at the hearing. *See id*. at 17-21

The Commissioner responds that the ALJ accounted for these opinions, and his RFC determination was supported by substantial evidence. *See* ECF No. 9-1 at 7-15. Further, argues the Commissioner, because the record was sufficiently developed as to Plaintiff's impairments, symptoms, and functional limitations, there were no gaps in the record and the ALJ had no obligation to further develop the record. *See id*. at 17-21.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the record contained sufficient evidence for the ALJ to formulate an RFC that accounted for Plaintiff's limitations that were supported by the record, and no further development is required. The ALJ appropriately weighed the medical evidence, including the medical opinions, treatment notes, objective findings, and Plaintiff's testimony, and his RFC determination was supported by substantial evidence. Accordingly, the Court finds no error.

As noted above, Plaintiff challenges the ALJ's RFC determination. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and*

6

*recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d

7

at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Plaintiff first contends that the RFC is deficient because it does not account for the opinion of consultative examiner David Brauer, M.D. ("Dr. Brauer"), who assessed "up to moderate limitations climbing, pushing, pulling, carrying heavy objects, bending or squatting," and the opinion of psychiatric consultative examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), who assessed moderate limitations in certain areas mental functioning. *See* ECF No. 8-1 at 11-16 (citing Tr. 253, 259). Notably, Plaintiff does not challenge the ALJ's decision to assign considerable weight to either opinion, but rather asserts that because the ALJ assigned Dr. Ippolito's and Dr. Brauer's opinions "considerable probative value," the ALJ was required to explicitly account for each and every one of their opinions in the RFC finding. *See* ECF No. 8-1 at 12. However, as discussed below, the ALJ accounted for Dr. Ippolito's and Dr. Brauer's opinions by limiting Plaintiff to unskilled light work, and Plaintiff has not shown that the opinions are inconsistent with the RFC finding. Moreover, contrary to Plaintiff's claims, the ALJ was not required to explicitly discuss each limitation identified by Dr. Ippolito and Dr. Brauer, because the RFC finding accounted for these limitations.

With respect to Plaintiff's argument that the ALJ was required to account for Dr. Brauer's opinions of "up to moderate limitations climbing, pushing, pulling, carrying heavy objects, bending or squatting," Plaintiff overlooks the fact that the ALJ explicitly cited Dr. Brauer's opinion by limiting Plaintiff to light work. Tr. 19, 259. The regulations define light work as "lifting no

more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Accordingly, the ALJ accounted for mild-to-moderate limitations in carrying heavy objects by limiting Plaintiff to light work. Additionally, the regulations explain that "a job is in [the light] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." *Id*. Light work therefore requires pushing and pulling no more than "some of the time," and accounts for a mild-to-moderate limitation in pushing and pulling. *Id*.

Finally, the ALJ explained that bending, stooping, and climbing are only occasionally required for the performance of light work activity. Tr. 19 (citing Social Security Ruling ("SSR") 83-14, 1983 WL 31254 at *2 ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)"); SSR 85-15, 1985 WL 56857 at *6 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.").

As courts in the Second Circuit have consistently found, an opinion of mild-to-moderate limitations in physical functioning is consistent with the demands of light work. *April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. Sept. 27, 2019) ("moderate limitations in standing and walking are consistent with light work"); *Gerry v. Berryhill*, 2019 WL 955157, *3 (E.D.N.Y. Feb. 26, 2019) ("[c]ourts within this Circuit have held that opinions of similar 'mild to moderate limitations' [for standing, walking, climbing, bending, lifting, carrying, and kneeling] support RFC findings that claimants are capable of 'light work'") (collecting cases); *Heidrich v. Berryhill*, 312 F. Supp. 3d

371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the demands of light work"); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. March 2, 2016) (finding that moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases). Accordingly, the ALJ reasonably and properly accounted for Dr. Brauer's opinion of mild-to-moderate limitations in heavy carrying, pushing, pulling, bending, stooping, and climbing by limiting Plaintiff to light work. Tr. 19.

Furthermore, as noted above, the RFC finding is based upon *all* the relevant evidence in the case record. 20 C.F.R. § 416.945(a) (emphasis added). In this case, the ALJ's finding that Plaintiff retained the ability to perform a full range of light work is supported by substantial evidence in the record. The ALJ considered Plaintiff's complaints of back pain, but he noted that clinical findings and diagnostic studies were benign and that the record did not show treatment for back pain during the relevant period. Tr. 19. As the ALJ noted, an x-ray study of Plaintiff's lumbar spine performed on July 29, 2016 was unremarkable, and Dr. Brauer's July 2016 examination revealed normal findings, with the exception of some limited range of motion upon flexion, lateral flexion, and rotation of his lumbar spine. Tr. 19, 258, 260. The ALJ also noted that Plaintiff denied receiving formal treatment for back pain, relying instead on Tylenol with codeine and ibuprofen for pain relief. Tr. 19, 256. Additionally, the ALJ observed that records from Plaintiff's primary care provider made no mention of back pain. Tr. 20, 266-73, 313-14, 326-28.

Plaintiff also reported cleaning, doing laundry, shopping for groceries, and mowing the lawn, demonstrating that he was able to perform activities consistent with the demands of light work, including some carrying, pushing, pulling, and bending. Tr. 154, 252. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating

the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Finally, the ALJ also considered that Plaintiff fractured his left tibia and fibula in mid-2018, undergoing surgery on July 7, 2018, to insert an intramedullary rod. Tr. 19, 358-59. The ALJ, however, noted that at a follow-up appointment on August 21, 2018, Plaintiff's orthopedic surgeon found good range of motion in Plaintiff's left knee and ankle, noted "routine healing," and advised that Plaintiff could bear weight on his left leg as tolerated, so long as he wore a "CAM walker boot," which, notably, Plaintiff was not wearing at the time of his visit. *Id*. By September 17, 2018, Plaintiff was ambulating with a slight limp and a crutch. Tr. 380. As such, the records show that Plaintiff's left leg fracture was healing, and the record did not establish that Plaintiff's left leg fracture caused long-term functional limitations that interfered with his ability to perform light work for a period of 12 months or longer. *See* 42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i) (To receive SSI under the Act, a claimant must furnish evidence establishing that he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment which can be expected to last for a continuous period of not less than 12 months."). In sum, the ALJ accounted for Dr. Brauer's opinion of mild-to-moderate limitations by limiting Plaintiff to light work, and the RFC for light work is supported by substantial evidence.

Similarly, the ALJ accounted for Dr. Ippolito's opinions of moderate limitations, and the ALJ's RFC for unskilled work is supported by substantial evidence. Although Plaintiff contends that the ALJ was required to account for Dr. Ippolito's opinion that Plaintiff "can maintain attention and concentration, learn new tasks, relate adequately with others, and appropriately deal with stress with moderate limitations" (*see* ECF No. 8-1 at 15-16), the ALJ explicitly cited Dr. Ippolito's opinion, and accounted for her opinion of moderate limitations in these areas of mental functioning by limiting Plaintiff to unskilled work. Tr. 19, 21-22, 259.

Unskilled work is defined in the regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 416.968(a). Furthermore, the regulations explain that "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)." 20 CFR Pt. 404, Subpt. P. App. 2 § 202.00(g). As such, unskilled work, by definition, already accounts for limitations in mental functioning, including limitations interacting with others and learning new tasks.

Furthermore, the Second Circuit has found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming the ALJ's RFC for unskilled work, noting that "[n]one of the clinicians who examined [Zabala] indicated that she had anything more than moderate limitations in her work-related functioning."); *see also Shirback v. Comm'r of Soc. Sec.*, 18-cv-01222-JGW, 2020 WL 247304 at *4 (W.D.N.Y. January 16, 2020) (citing cases and noting that "[t]here is plethora of case law within the Second Circuit holding that a[n] RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal with stress or other specific areas of mental functioning."); *Gibbons Thornton v. Colvin*, 14-cv-748-WMS, 2016 WL 611041 at *3 (W.D.N.Y. February 16, 2016) (citing 20 C.F.R. 416.968(a)) (finding that the consultative

examiner's opinion of moderate limitations maintaining attention and concentration, maintaining a regular schedule, learning new tasks, relating adequately with others, and dealing appropriately with stress was "fully consistent" with an RFC for unskilled work, citing the regulations and noting that "[u]nskilled work is work with needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); *Crawford v. Astrue*, No. 13-cv-6068-MWP, 2014 WL 4829544, at *23 (W.D.N.Y., Sept. 29, 2014) (finding that "although the ALJ did not discuss the moderate limitations assessed by [a non-examining psychiatrist], he incorporated moderate limitations into his RFC by restricting [Plaintiff] to jobs that require an individual to understand, remember and carry out simple instructions.").

Notably, an RFC for simple and routine work can be consistent with moderate limitations in specific areas of mental functioning "particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work." *Shirback*, 2020 WL 247304 at *4. Here, Dr. Ippolito opined that Plaintiff was able to follow, understand, and perform simple tasks independently despite her assessment of moderate limitations in certain areas of mental functioning. Tr. 253. Additionally, the ALJ noted that Dr. Ippolito stated that the results of her evaluation appeared to be consistent with psychiatric problems, "but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Tr. 19, 253. Thus, Dr. Ippolito determined that Plaintiff's moderate limitations in functioning did not interfere with his ability to function on a daily basis, and her report as a whole supports the ALJ's finding that Plaintiff was able to perform unskilled work even with moderate limitations in certain areas of mental functioning.

The ALJ also considered that Plaintiff was able to clean, do laundry, care for his daughter, and shop for groceries independently. Tr. 18, 153-55, 252, 257. Furthermore, the ALJ noted that Plaintiff reported spending most of his day watching television and playing video games, demonstrating the ability to maintain focus, attention, and concentration. Tr. 18, 20, 152, 156, 253. Similarly, Plaintiff advised that he was able to use a computer and phone to shop online, further demonstrating his ability to perform simple tasks. Tr. 155. Finally, while Plaintiff reported that he did not like being around crowds or engaging with others, he also reported attending church two-to-three times per month and shopping in stores. Tr. 18, 155-57.

The ALJ further considered that although Plaintiff alleged disabling depression, the record showed limited mental health treatment and failure to attend scheduled counseling sessions. Tr. 16, 18, 314, 318. A claimant's failure to seek treatment significantly undermines a claim of disability. *Arnone v. Bowen*, 882 F.2d 34, 39 (2d. Cir. 1989). For example, Plaintiff also reported "on and off" treatment at Horizon. Tr. 250. In March 2017, Plaintiff was advised to find a new psychiatrist and undergo neuropsychiatric testing, yet he did not follow these recommendations until 2018. Tr. 318, 326, 332. The ALJ further noted that neuropsychiatric testing performed in June 2018 did not indicate compromise of the cognitive domains, despite Plaintiff's "suboptimal effort" on testing. Tr. 19, 21, 352, 382, 407. Additionally, when Plaintiff went for a psychiatric evaluation in September 2018 with a new psychiatrist, he demonstrated cooperative behavior, normal psychomotor activity, goal-directed thought processes, and grossly intact memory. Tr. 380.

Based on the foregoing, the ALJ reasonably concluded that, based on the totality of the evidence in the record, while Plaintiff experienced some symptoms and limitations on account of his depression, he nonetheless retained the ability to perform simple tasks despite these symptoms and limitations.

As previously explained, , it is ultimately Plaintiff who bears the burden of proving that his RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Poupore*, 566 F.3d at 306; *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Moreover, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448 (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a de novo review). While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record.

Plaintiff also argues that the ALJ erroneously found Plaintiff not disabled without vocational expert testimony. *See* ECF No. 8-1 at 15-16. He contends that the moderate limitations identified by Dr. Brauer and Dr. Ippolito erode the occupational base of unskilled light work, and that the ALJ was therefore required to call a vocational expert. *See id*. at 15-16. Plaintiff's argument is unavailing.

At step five of the sequential analysis, the ALJ considered Plaintiff's RFC and vocational factors (*i.e.*, his age, education, and work experience), in conjunction with the Medical Vocational Rules at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"), and determined that jobs exist in the significant numbers in the national economy that Plaintiff can perform. Tr. 21. The ALJ specifically found that Plaintiff was classified as a younger individual with a high school education and the ability to communicate in English. Tr. 22. Based on a claimant with Plaintiff's vocational factors and RFC, the Grids direct a finding of "not disabled." 20 C.F.R. Part 404, Subpart P, App. 2, § 202.20.

The ALJ's exclusive reliance on the Grids was proper. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d. Cir. 1986) (The Commissioner may rely on the Grids where the claimant's non-exertional limitations do not significantly erode the range of work permitted by his exertional limitations). A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 605-06. Furthermore, Plaintiff's argument merely rehashes his challenge to the RFC finding. As discussed above, the ALJ accounted for these moderate limitations by limiting Plaintiff to unskilled light work, and the ALJ was therefore permitted to rely on the Grids to determine that work exists in significant numbers in the national economy that Plaintiff can perform.

Plaintiff finally argues that remand is warranted because the ALJ had a "heightened duty" to develop the record in light of Plaintiff's *pro se* status. *See* ECF No. 8-1 at 16-19. He specifically contends that the ALJ failed to provide a full and fair hearing, because the ALJ did not sufficiently question Plaintiff about his symptoms and functional limitations at the hearing. Although a claimant is entitled to a full and fair hearing under the Commissioner's regulations, *Moran v.*

*Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) and has a statutory right to be represented by counsel, 20 C.F.R. §§ 404.950(a), 404.105, a claimant, if properly informed, may waive this right to representation, *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009).. Here, there is no dispute that Plaintiff freely waived his right to representation. At the hearing, the ALJ asked Plaintiff if he wanted an adjournment to find a lawyer, and Plaintiff responded that that he did not want to adjourn the hearing and that he wished to proceed without a lawyer. Tr. 31. The ALJ thereby confirmed that Plaintiff understood his right to representation and received his written and oral waiver of his right to a representative. Tr. 31, 106.

Plaintiff also contends that the ALJ should have asked more questions about his back problem, daily activities, ability to interact with others, and difficulties with attention and concentration. *See* ECF No. 8-1 at 17-18. However, the ALJ properly developed the record with respect to each of these matters, and no further record development was warranted. *See Rosa v. Callahan*, 168 F.3d at 79 n. 5 ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."

Although Plaintiff argues that the ALJ did not ask any follow-up questions about his back (*see* ECF No. 8-1 at 17-18), he ignores the fact that the Agency referred him to Dr. Brauer for a consultative examination to assess the limitations caused by his spinal impairment. Tr. 256-60. Additionally, the ALJ considered Plaintiff's testimony that he had back problems due to the curvature of his spine and noted that this testimony was inconsistent with an unremarkable x-ray of Plaintiff's lumbar spine. Tr. 20, 260. As discussed above, the ALJ properly concluded that Plaintiff's claims of a disabling back impairment were inconsistent with Dr. Brauer's mostly normal clinical findings, the unremarkable x-ray study, and a lack of treatment for back pain

throughout the period at issue. Tr. 20, 256-60, 266-73, 313-14, 326-28. As such, the ALJ properly developed the record as to Plaintiff's back pain, and Plaintiff has not shown that there was a gap in the record that warrants remand.

The ALJ also attempted to elicit testimony regarding Plaintiff's daily activities at the hearing, explicitly asking Plaintiff how he spent his days, to which Plaintiff responded, "I don't do nothing much, just sit home and watch TV and that's about it." Tr. 35-36. The ALJ then asked Plaintiff if he performed any household chores, and Plaintiff responded, "yeah, but not a lot." Tr. 36. The ALJ's decision reflects that he also considered other evidence in the record regarding Plaintiff's activities. Specifically, the ALJ relied upon a June 2016 function report, in which Plaintiff advised that he took care of his daughter, cleaned, mowed the lawn, shopped for groceries online and in stores, did the laundry, watched television, and played video games. Tr. 18, 154-63. In addition, the ALJ relied on Plaintiff's statements to Dr. Ippolito and Dr. Brauer regarding his daily activities. Tr. 18, 252-53, 257. With respect to Plaintiff's social activities, Plaintiff stated in his function report that he did not like to socialize or be around people, but he also reported that he went to church two-to-three times per month and went shopping in stores. Tr. 18, 155-57. Accordingly, the record was sufficiently developed with respect to Plaintiff's daily and social activities.

Plaintiff's complaints about the ALJ's questioning with respect to Plaintiff's mental functioning are similarly unavailing. The ALJ asked Plaintiff why he was not able to work, and Plaintiff responded: "I just don't understand a lot of stuff and I don't want to be a – I don't know. I just can't – I don't know. I just can't work." Tr. 35. The ALJ asked a second time, and Plaintiff reiterated that he was not able to work because he did not understand his tasks. Tr. 35. Thus, the ALJ tried to elicit testimony regarding Plaintiff's mental functioning and difficulties. Furthermore,

the ALJ carefully questioned Plaintiff about his mental health treatment providers and the dates of treatment in order to ensure that the record was properly developed as to Plaintiff's mental impairments. Tr. 32-34. The Agency also referred Plaintiff to Dr. Ippolito for a consultative psychological examination to assess his mental functioning, and the ALJ issued a subpoena in order to obtain updated treatment notes from DENT Neurologic Institute. Tr. 250-54, 404. Finally, the ALJ also considered Plaintiff's June 2016 statements regarding his mental symptoms and functioning, as well as his complaints to Dr. Ippolito. Tr. 18, 154-63, 250. Accordingly, the record was sufficiently developed with respect to Plaintiff's mental functioning, and Plaintiff has not shown that there was a gap in the record warranting remand.

Notably, although Plaintiff argues that remand is warranted for further record development, Plaintiff has not identified any missing records. *See Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[Commissioner] is entitled to rely not only on what the record says but also on what it does not say.").

In addition, although Plaintiff appeared *pro se* at the administrative hearing, the record indicates that Plaintiff was represented for most of the administrative proceedings. Prior to the administrative hearing, Plaintiff was represented by three different attorneys at the Mental Health Association of Erie County, Legal Services and Advocacy ("Legal Services"). *See* Tr. 60, 80, 100. Legal Services ultimately withdrew its representation in July 2018 after numerous unsuccessful attempts to contact Plaintiff. Tr. 102. After the ALJ issued his decision, Plaintiff appointed Mr. Hiller to serve as his representative. Tr. 9. By notice dated December 22, 2018, the Appeals

Council advised Mr. Hiller that it would not act on Plaintiff's request for 25 days, so that Mr. Hiller could submit additional evidence and/or a statement about the facts and the law in Plaintiff's case. Tr. 7-8. As noted above, Mr. Hiller submitted a letter to the Appeals Council asking it to consider "whether the ALJ adhered to his statutory duty to develop the hearing record" but did not identify any gaps in the record or submit any additional evidence. Tr. 207. Thus, Plaintiff has failed to identify any gap in the record warranting remand. Moreover, the record was sufficiently developed as to Plaintiff's impairments, symptoms, and functional limitations, and the ALJ therefore had no obligation to further develop the record. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (the ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability."). Accordingly, Plaintiff has not met his burden of showing that remand is warranted for further record development, and the Court finds no error.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE